[No. B161230. Second Dist., Div. Three. Feb. 26, 2004.]

KENTON E. MOORE, as Trustee, etc., Plaintiff and Appellant, v. NANCY A. SHAW et al., Defendants and Appellants.

COUNSEL

Law Offices of Patricia A. Moore and Patricia A. Moore for Plaintiff and Appellant.

Hollins & Fields, Byron S. Hollins and Howard M. Fields for Defendants and Appellants.

OPINION

**KLEIN, P. J.**—Defendants and appellants Nancy A. Shaw (Nancy Shaw) and Reay and Shaw (collectively, Nancy Shaw) appeal an order denying their anti-SLAPP[1] motion wherein they sought to strike the first amended petition of plaintiff and appellant Kenton E. Moore (Kenton)[2] requesting an order directing Nancy Shaw to pay damages. (Code Civ. Proc., § 425.16.)[3]

Kenton cross-appeals the order insofar as it denied his request for attorney fees.

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

[2] We refer to the various family members by their first names for purposes of clarity and not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306]; *Askew v. Askew* (1994) 22 Cal.App.4th 942, 947, fn. 6 [28 Cal.Rptr.2d 284].)

[3] An order denying a special motion to strike is appealable. (Code Civ. Proc., §§ 425.16, subd. (j), 904.1.)

All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

The issues presented include whether Kenton's action was subject to an anti-SLAPP motion, and if so, whether Kenton met his burden of establishing a probability of prevailing in the litigation.

We conclude Nancy Shaw did not meet her threshold burden, as the moving defendant, of establishing the challenged causes of action arose from protected activity. Accordingly, the denial of the anti-SLAPP motion is affirmed.

However, the order is reversed insofar as it denied Kenton's request for attorney fees which he incurred in opposing the anti-SLAPP motion. Not only did Nancy Shaw fail to meet her threshold burden of establishing the challenged causes of action arose from protected activity, but any reasonable attorney would agree the instant anti-SLAPP motion was totally devoid of merit. Therefore, Kenton is entitled to mandatory attorney fees under section 425.16, subdivision (c), and the trial court is directed to make such an award on remand.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The EEM Trust.*

On February 16, 1995, Evah Ellis Moore (Evah) executed the Declaration of Trust for the Evah Ellis Moore 1995 Trust (EEM Trust). Under its terms, in the event of Evah's incapacity or death, her son George Moore (George) would become successor trustee and, in the event of his death, disqualification, or incapacity, Evah's grandson, Kenton, would become successor trustee. The trust would terminate on the five-year anniversary of Evah's death.

In October 1995, Evah executed the first amendment to the EEM Trust. It provided that after Evah's death and the distribution of certain assets to Evah's daughter, Susan Moore Leslie (Susan), "[t]he successor trustee shall distribute to George E. Moore and Susan Moore Leslie, in equal shares, all of the net income from the residuary trust estate until termination of the trust, which shall be (5) years from the death of Trustor, at which time the entire balance of the residue and accrued income of the trust estate shall be likewise distributed; *[if] either of said two beneficiaries should die prior to termination of the trust, all of the net income from his or her share of the trust estate shall be distributed to his or her issue, by right of representation and, if no issue survive, all of the net income shall be distributed to the surviving beneficiary*; and, if both George E. Moore and Susan Moore Leslie fail to survive the trustor, the trust shall terminate on the death of the second of them, and the trust property available for distribution shall then be distributed

to Evah Ellis Moore's heirs at law, in accordance with the then current laws of succession of the state of California." (Italics added.)

Evah died on September 19, 1997, and George became the successor trustee of the EEM Trust.

### 2. *The premature distribution of the EEM Trust assets.*

In 1999, George was diagnosed with cancer and retained attorney Nancy Shaw to perform estate planning services, which included drafting an agreement authorizing him to distribute the assets of the EEM Trust in advance of the scheduled distribution date of September 19, 2002, which would be the five-year anniversary of Evah's death. At George's request, Nancy Shaw drafted documentation to reflect George and Susan's understanding regarding the distribution of the EEM Trust assets. The agreement was contained in two documents, an "Agreement to Terminate Trust" and an "Agreement of Beneficiaries Regarding Evah Ellis Moore Trust Dated 2–16–95" (collectively referred to as the termination agreement). Nancy Shaw also drafted the Moore Family Revocable Inter Vivos Trust (MFIV Trust), which would take title to the assets transferred to George from the EEM Trust.

In September 1999, George and Susan executed the termination agreement, which was notarized. George then sent a copy to Spelman & Co. (Spelman), the brokerage firm where the EEM Trust's assets were being held, with instructions to equally divide the EEM Trust assets between Susan and himself. Spelman complied and transferred nearly $1.2 million in securities and money market funds to George and Susan, respectively.

### 3. *George's will.*

On October 7, 1999, George executed his will, directing that after certain bequests, the residue of his estate would be added to the trust estate of the MFIV Trust, thereby disinheriting his children from a prior marriage, including Kenton.

George died on August 26, 2000. Had the EEM Trust not been terminated, George's death at that juncture would have caused his income from the trust to pass to his issue, and upon the five-year anniversary of Evah's death, the remaining principal and accrued income likewise would be distributed.

### 4. *Probate proceedings.*

On September 15, 2000, George's widow, Eilene J. Moore (Eilene), filed a petition for her appointment as executrix of George's will and letters testamentary were issued to her. Nancy Shaw represented Eilene as executrix of

the will. As indicated, George previously had transferred the EEM Trust assets to the MFIV Trust, and therefore those assets were not in his estate at the time of his death.

Sometime in 2001, Kenton received an anonymous letter from a family friend informing him of the existence of the EEM Trust, George's transfer of the trust assets and Kenton's designation as successor trustee. On September 24, 2001, Kenton filed a petition for leave to file a late creditor's claim against his father's estate. In addition, Kenton filed a petition pursuant to former section 9860 of the Probate Code against his father's estate, contending George had converted approximately $600,000 of the EEM Trust assets for his own use.

When Kenton learned the EEM Trust assets had been transferred to the MFIV Trust prior to George's death and therefore were not part of George's estate, Kenton filed a petition against Eilene, the trustee of the MFIV Trust, to recover the EEM Trust assets. However, those assets were no longer in the MFIV Trust as they had been transferred to yet another trust, the Moore Family Administrative Trust.

Kenton also filed a petition for an order appointing him as the successor trustee of the EEM Trust and for a determination as to the rights of the EEM Trust beneficiaries as to the distribution of assets.

On January 18, 2002, the trial court appointed Kenton as successor trustee and ordered counsel to file memoranda of points and authorities as to their respective interpretations of the trust documents.

On January 25, 2002, Kenton filed a petition for an order directing Eilene to transfer property and pay damages pursuant to Probate Code sections 850 and 859, alleging that as trustee of the Moore Family Administrative Trust, Eilene held title and possession of approximately $615,000 that originated from the EEM Trust.

On or about May 6, 2002, Kenton negotiated a settlement with Eilene whereby she returned the remaining EEM Trust assets that were held in a Spelman account and also made a cash payment of $272,219 in exchange for a dismissal from the action.

> 5. *Kenton's petition for an order directing Nancy Shaw to pay damages.*

After settling with Eilene, Kenton continued to prosecute the matter as against Nancy Shaw and George's sister, Susan. On May 24, 2002, Kenton

filed the operative pleading herein, a first amended petition for an order directing Nancy Shaw to pay damages and an order directing Susan to transfer property. As against Nancy Shaw, Kenton pled causes of action for intentional and negligent participation in a breach of trust.

Kenton alleged in relevant part: Based upon her experience as a probate attorney, Nancy Shaw knew the termination agreement violated the termination provision of the EEM Trust as well as its provisions regarding the distribution of the net income and the principal and accrued income. Nancy Shaw knew the termination agreement was a legal nullity and that the only way to legally terminate the EEM Trust prior to its stated termination date was to petition the court for such termination and to provide notice of said petition to all beneficiaries, named and contingent. Nancy Shaw engaged in said conduct to receive the immediate gain of attorney fees which were paid to her for drafting the termination agreement. Nancy Shaw's participation in George's breach of trust caused the EEM Trust to lose assets valued at approximately $600,000 in addition to lost profits, dividends, interest and attorney fees.

### 6. *Nancy Shaw's anti-SLAPP motion.*

On June 13, 2002, Nancy Shaw, represented by counsel, filed an anti-SLAPP motion to strike Kenton's first amended petition. The motion was brought on the ground that Kenton's causes of action for intentional and negligent participation in a breach of trust were subject to a special motion to strike (§ 425.16) in that the causes of action arose from Nancy Shaw's conduct in representing George, Eilene and Eilene in her capacity as executrix of George's estate, and their exercise of the constitutional rights of freedom of speech and petition for redress of grievances in the context of the probate of the estates of Evah and George.

### 7. *Kenton's cross-motion for summary adjudication.*

In response to Nancy Shaw's anti-SLAPP motion, Kenton filed a cross-motion for summary adjudication on two issues: Nancy Shaw, in performing legal services for George, owed a duty to the EEM Trust and its beneficiaries not to participate in a breach of trust;[4] and no triable issue existed as to Kenton's cause of action against Nancy Shaw for negligent participation in a breach of trust, and therefore that cause of action should be summarily adjudicated in Kenton's favor.

Kenton's moving papers included as an exhibit a declaration which Nancy Shaw previously filed in response to Kenton's petition against Eilene. In the

---

[4] A party may move for summary adjudication on the issue of duty. (§ 437c, subd. (f)(1).)

declaration, Nancy Shaw admitted she was familiar with the terms of the EEM Trust at the time she drafted the termination agreement. The declaration stated, inter alia: "In the course of preparing a family trust for GEORGE E. MOORE and his wife, EILENE J. MOORE, prior to the death of GEORGE E. MOORE, I received certain documents which were important with regard to the estate matters of both GEORGE and EILENE MOORE. At that time, which was sometime in mid-1999, I received a copy of the Evah Moore Trust dated 2–16–95 from GEORGE E. MOORE. I did not represent GEORGE E. MOORE as Successor Trustee with regard to said Trust. However, he did ask me to prepare an agreement between GEORGE and his sister, SUSAN, which reflected their understanding with regard to the distribution of the trust assets. GEORGE E. MOORE indicated to me in the process of preparing the agreement to be signed by GEORGE and his sister, SUSAN, that *he believed* that upon the expiration of the five-year term of the trust, the remaining principal and any income would by the terms of the trust be distributable to his sister and to him, or, if one or both of them were dead, to their respective estates; and, relying on that belief GEORGE considered that the termination of the trust with the consent of his sister would be an effective means of meeting her financial needs." (Italics added.)

8. *Kenton's opposition to the anti-SLAPP motion.*

Kenton also filed an opposition to the anti-SLAPP motion, arguing that the anti-SLAPP motion should be denied because Nancy Shaw failed to meet her threshold burden of establishing that she drafted the termination agreement in connection with pending or imminent litigation. Kenton also contended the motion was untimely because an anti-SLAPP motion must be noticed for hearing not more than 30 days after service of the motion. (§ 425.16, subd. (f).) Finally, with respect to the merits, Kenton argued the motion should be denied because he easily met his burden of establishing a probability of prevailing in the action, in that it is well settled that an attorney, who with knowledge that a breach of trust is occurring, participates in the breach of trust, is liable for all resulting losses.

Kenton pointed out Nancy Shaw's admission that she received and read the EEM Trust instrument before drafting the termination agreement. Thus, it was clear that she knew, or should have known, that it would be a breach of trust to distribute prematurely the trust assets. Therefore, her act of drafting the termination agreement rendered her liable for losses sustained by the EEM Trust and its beneficiaries.

Kenton also sought $5,405 in attorney fees on the ground Nancy Shaw's anti-SLAPP motion was frivolous.

### 9. *Trial court's ruling.*

On August 9, 2002, the matter came on for hearing. The trial court denied Nancy Shaw's anti-SLAPP motion, stating, "I don't think this is a First Amendment issue, first of all. I think that takes it immediately out of a SLAPP issue."

In making its ruling, the trial court specifically rejected Nancy Shaw's reliance on *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106 [81 Cal.Rptr.2d 471, 969 P.2d 564] (hereafter *Briggs*).[5] The trial court did not award attorney fees to Kenton.[6]

### 10. *Appeals.*

Nancy Shaw filed notice of appeal from the order denying the anti-SLAPP motion. Kenton filed notice of cross-appeal from the order insofar as it denied his request for attorney fees.

## CONTENTIONS

Nancy Shaw contends Kenton's petition was subject to an anti-SLAPP motion and Kenton failed to establish a probability of prevailing on either of his causes of action.

Kenton contends the trial court erred in denying his request for attorney fees.

## DISCUSSION

### 1. *The remedy of a special motion to strike under section 425.16.*

The purpose underlying section 425.16 is set forth in the anti-SLAPP statute, which states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and

---

[5] As discussed in greater detail *infra,* the *Briggs* decision explains when an action is subject to a special motion to strike. (*Briggs, supra,* 19 Cal.4th 1106.)

[6] The trial court also denied Kenton's motion for summary adjudication. It found questions of fact existed as to whether Nancy Shaw acted as counsel for the trustee, and whether there was any financial gain to her. However, the summary adjudication ruling is not presently before us for review.

that this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)

To meet this concern, the statute provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United\ States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

■ That determination is made on the basis of the pleadings, as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. (§ 425.16, subd. (b)(2).) Once it has been determined there is a probability the plaintiff will prevail, that determination is inadmissible at any later stage of the case and does not affect the applicable burden or degree of proof. (§ 425.16, subd. (b)(3).)

■ Thus, section 425.16 is analogous to other statutes requiring the plaintiff to make a threshold showing, which are aimed at eliminating meritless litigation at an early stage. (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 355 [42 Cal.Rptr.2d 464]; see, e.g., Code Civ. Proc., §§ 425.13 [punitive damages claim against health care providers], 425.14 [punitive damages claim against a religious corporation]; Civ. Code, § 1714.10 [cause of action against attorney for civil conspiracy with a client].)

■ Section 425.16 does not impair the right to a trial by jury because the trial court does not weigh the evidence in ruling on the motion, but merely determines whether a prima facie showing has been made which would warrant the claim going forward. (*Robertson v. Rodriguez, supra*, 36 Cal.App.4th at p. 356, fn. 3.) Whether or not the evidence is in conflict, if the plaintiff has presented a sufficient pleading and has presented evidence showing that a prima facie case will be established at trial, the plaintiff is entitled to proceed. (*Id.*, at pp. 355–356.)

### 2. *Burdens of proof and standard of review.*

We "summarize a court's task in ruling on an anti-SLAPP motion to strike as follows. Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or

California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

In other words, "the moving defendant's burden is to show the challenged cause of action 'arises' from protected activity. [Citations.] Once [but only if] it is demonstrated the cause of action *arises* from the exercise of the defendant's free expression or petition rights, then the burden shifts to the plaintiff to show a probability of prevailing in the litigation." (*Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 151 [106 Cal.Rptr.2d 843].)

We review the trial court's rulings on these two issues under a de novo standard and conduct an independent review. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].)

3.  *Nancy Shaw, in moving to strike, failed to meet her threshold burden of showing the challenged causes of action arose from protected activity.*

As indicated, in terms of the threshold issue, a moving defendant's burden is to show the challenged cause of action arises from protected activity. (*Shekhter v. Financial Indemnity Co., supra,* 89 Cal.App.4th at p. 151.)

a.  *What constitutes a cause of action arising from protected activity.*

Section 425.16 provides, inter alia, that "A cause of action against a person arising from any act of that person *in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue* shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.)

As used in section 425.16, " '*act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue*' includes: (1) any written or oral statement or

writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e), italics added.)

> b. *Nancy Shaw's conduct in drafting the termination agreement for George was not an act in furtherance of the right of petition or free speech.*

"The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 [124 Cal.Rptr.2d 519, 52 P.3d 695].) The Supreme Court has explained the phrase " 'arising from' " in section 425.16 should not be construed as meaning " 'in response to.' " (*City of Cotati, supra,* at p. 77.) The "statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]" (*Id.,* at p. 78; accord, *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [135 Cal.Rptr.2d 903].)

Here, in ruling on the anti-SLAPP motion, the trial court observed, "I don't think this is a First Amendment issue, first of all. I think that takes it immediately out of a SLAPP issue." The trial court's ruling was sound. The act by Nancy Shaw underlying Kenton's causes of action was her drafting of the termination agreement to enable George to terminate the EEM Trust prematurely. That conduct by Nancy Shaw was *not* an act in furtherance of the right of petition or free speech, and therefore an anti-SLAPP motion did not lie.

> c. *Nancy Shaw's conduct was not an act "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).)*

Leaving aside the preliminary matter that Nancy Shaw's conduct in drafting the termination agreement was not an act in furtherance of the right

of petition or free speech, it also was not an act "in furtherance of the person's right of petition or free speech under the United States or California Constitution *in connection with a public issue.*" (§ 425.16, subd. (b)(1), italics added.)

*Briggs, supra,* 19 Cal.4th 1106, explains the public issue requirement. The issue presented therein was whether a defendant, moving specially under section 425.16 to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding, is required to demonstrate separately that the statement concerned an issue of public significance. (*Briggs, supra,* at p. 1109.)

The Supreme Court concluded a moving defendant in those circumstances need not separately demonstrate the statement concerned an issue of public significance. (*Briggs, supra,* 19 Cal.4th at p. 1123.) It reasoned, inter alia, that "[a]ny matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect. The Legislature's stated intent is best served, therefore, by a construction of section 425.16 that broadly encompasses participation in official proceedings, generally, whether or not such participation remains strictly focused on 'public' issues." (*Id.,* at p. 1118.)

Unlike the first two clauses of section 425.16, subdivision (e), which do not have an "issue of public interest" limitation (*Briggs, supra,* 19 Cal.4th at p. 1123), clauses (3) and (4) do include such a limitation. (*Ibid.*) *Briggs* explained: "the Legislature apparently judged the bright-line 'official proceeding' test set out in clauses (1) and (2) of section 425.16, subdivision (e) to be adequate, and thought it unnecessary to add an 'issue of public interest' limitation for those two classes of potential cases. For potential cases where an analog to the 'official proceeding' bright-line test does not readily appear—viz., 'public forum' (§ 425.16, subd. (e)(3)) and 'other conduct' (§ 425.16, subd. (e)(4)) cases—the Legislature *did* include an 'issue of public interest' limitation." (*Briggs, supra,* 19 Cal.4th at p. 1123; accord, *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1416–1417 [103 Cal.Rptr.2d 174] ["*Briggs* also clarifies that clauses (3) and (4) of subdivision (e) of section 425.16 protect conduct involving statements made in public fora (§ 425.16, subd. (e)(3)), and 'other conduct' that implicates First Amendment speech or petition rights (§ 425.16, subd. (e)(4)), but only if such public fora statements are made in connection with, or such 'other conduct' is in furtherance of, a public issue"].)

Here, Kenton's causes of action against Nancy Shaw did not arise from protected activity by her; they arose from her drafting the termination agreement for George well before the inception of any judicial proceedings. The gravamen of Kenton's two causes of action against Nancy Shaw is that she intentionally or negligently participated in a breach of trust by drafting the termination agreement for George which enabled him to terminate the EEM Trust prematurely, to the detriment of Kenton and the other contingent beneficiaries. We note Nancy Shaw drafted the termination agreement in September 1999, *one year before George's death* and nearly three years before Kenton filed his petition against her.

Thus, Nancy Shaw's conduct in drafting the termination agreement was not a "written or oral statement or writing made before a . . . *judicial proceeding* . . . ." (§ 425.16, subd. (e), clause (1), italics added.) Similarly, Nancy Shaw's conduct was not a "written or oral statement or writing made in connection with an issue under consideration or review by a . . . *judicial body* . . . ." (§ 425.16, subd. (e), clause (2), italics added.) Thus, both clauses (1) and (2) of section 425.16, subdivision (e), are unavailing to Nancy Shaw.

Further, Nancy Shaw's conduct in drafting the termination agreement was a wholly private matter, unconnected to any "public issue" or "issue of public interest." (§ 425.16, subd. (e), clauses (3), (4).) Therefore, clauses (3) and (4) of section 425.16, subdivision (e), likewise are unavailing to her.

Accordingly, we conclude the trial court properly determined Nancy Shaw failed to meet her threshold burden of establishing the challenged causes of action arose from protected activity. The denial of Nancy Shaw's anti-SLAPP motion was correct.

4. *The burden did not shift to Kenton to show a probability of prevailing in the litigation; in any event, Kenton showed a probability of prevailing on the merits.*

As explained above, *if* "it is demonstrated the cause of action *arises* from the exercise of the defendant's free expression or petition rights, then the burden shifts to the plaintiff to show a probability of prevailing in the litigation." (*Shekhter v. Financial Indemnity Co., supra,* 89 Cal.App.4th at p. 151.) Because Nancy Shaw did not meet her threshold burden, the burden did not shift to Kenton to show a probability of prevailing on the merits. Nonetheless, Kenton showed a probability of prevailing in the litigation. We briefly dispose of the issue.

"Section 326 of the Restatement [Second of Trusts] provides that '[a] third person who, although not a transferee of trust property, has notice that the

trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust.' (See also Bogert, Law of Trusts and Trustees (rev. 2d ed. 1995) § 868, pp. 104–109 [person who knowingly aids trustee in committing a breach of his duties is liable to the beneficiary]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 164, p. 1017 [beneficiary may sue third persons who participated in breaches of trust].) Comment a to section 326 of the Restatement Second of Trusts provides an example that is relevant to this case: '[I]f the trustee purchases through a stockbroker securities which it is a breach of trust for him to purchase and the broker knows that the purchase is in breach of trust, the broker is liable for participation in the breach of trust.' (At p. 124.)" (*Wolf v. Mitchell, Silberberg & Knupp* (1999) 76 Cal.App.4th 1030, 1039 [90 Cal.Rptr.2d 792].)

█ Here, Nancy Shaw admitted in her declaration that she read the EEM Trust instrument before drafting the termination agreement. Based thereon, the trier of fact could infer Nancy Shaw knew George was committing a breach of trust by prematurely terminating the EEM Trust and that she actively participated in George's breach of trust. Thus, Kenton established a probability of prevailing on his causes of action against Nancy Shaw for intentional and negligent participation in a breach of trust.[7,8]

5. *Nancy Shaw's anti-SLAPP motion was frivolous and therefore must incur sanctions.*

On cross-appeal, Kenton contends the trial court erred in denying his request for $5,405 in attorney fees which he incurred in opposing Nancy Shaw's anti-SLAPP motion. Kenton asserts attorney fees should have been awarded because Nancy Shaw's anti-SLAPP motion was frivolous and completely without merit in that she failed to meet her threshold burden under section 425.16.

a. *General principles.*

With respect to attorney fees, section 425.16 provides in relevant part at subdivision (c): "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court *shall* award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (Italics added.) █ Thus, the imposition of sanctions

---

[7] In view of the above, it is unnecessary to address Kenton's argument that Nancy Shaw's anti-SLAPP motion was untimely or any other issues.

[8] We express no opinion as to the merits of Kenton's allegations against Nancy Shaw. The issue at this juncture is simply whether Kenton made a sufficient prima facie showing to be entitled to proceed with his petition against her.

for a frivolous anti-SLAPP motion is mandatory. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735] [under § 425.16, subd. (c), any SLAPP defendant who brings a successful motion to strike is entitled to "mandatory attorney fees"].)

The "reference to section 128.5 in section 425.16, subdivision (c) means a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." (*Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1392 [129 Cal.Rptr.2d 892].)[9] Attorney fees under section 128.5 may be assessed against a party, the party's attorney, or both. (§ 128.5, subd. (a).) A determination of frivolousness requires a finding the anti-SLAPP "motion is 'totally and completely without merit' (§ 128.5, subd. (b)(2)), that is, '*any reasonable attorney would agree such motion is totally devoid of merit.*' [Citation.]" (*Decker, supra,* at p. 1392, italics added.) We review the trial court's order for an abuse of discretion. (*Id.*, at p. 1391.)

> b. *The instant anti-SLAPP motion was frivolous, entitling Kenton to a mandatory award of attorney fees.*

Given this record, Nancy Shaw's anti-SLAPP motion was frivolous and therefore must incur sanctions. As explained, Nancy Shaw failed to meet her threshold burden of establishing the challenged causes of action arose from protected activity. The conduct by Nancy Shaw underlying Kenton's causes of action was her drafting of the termination agreement to enable George to terminate the EEM Trust prematurely. That conduct by Nancy Shaw was *not* an act in furtherance of the right of petition or free speech in connection with a public issue, and therefore an anti-SLAPP motion did not lie.

With respect to the chronology, Nancy Shaw drafted the termination agreement in September 1999, *one year before George's death* and nearly three years before Kenton filed his petition against her. Thus, Nancy Shaw's conduct in drafting the termination agreement was not a "written or oral statement or writing made before a . . . *judicial proceeding* . . . ." (§ 425.16, subd. (e), clause (1), italics added.) Similarly, Nancy Shaw's conduct was not a "written or oral statement or writing made in connection with an issue under consideration or review by a . . . *judicial body* . . . ." (§ 425.16, subd. (e), clause (2), italics added.) Thus, Nancy Shaw cannot bring herself within clauses (1) and (2) of section 425.16, subdivision (e).

---

[9] Irrespective of the statement in section 128.5 that it applies only to actions or tactics arising "from a complaint filed, or a proceeding initiated, on or before December 31, 1994" (§ 128.5, subd. (b)(1)), the procedures and standards of section 128.5 remain operative to guide the implementation of the attorney fee provision of section 425.16, subdivision (c). (*Decker, supra,* 105 Cal.App.4th at p. 1392.)

Nancy Shaw's conduct in drafting the termination agreement was simply part of a private transaction, unconnected to any "public issue" or "issue of public interest." (§ 425.16, subd. (e), clauses (3), (4).) Therefore, as discussed in part 3 of the Discussion, *ante*, clauses (3) and (4) of section 425.16, subdivision (e), likewise are unavailing to her.

Because Nancy Shaw's underlying conduct clearly did not constitute an act in furtherance of the right to petition or free speech in connection with a public issue, as those terms are defined in section 425.16, any reasonable attorney would agree that an anti-SLAPP motion did not lie under these circumstances and that the instant motion was totally devoid of merit. Accordingly, an award to Kenton of reasonable attorney fees was mandatory (§ 425.16, subd. (c)), and the trial court lacked discretion to deny Kenton's request therefor.[10,11]

## DISPOSITION

The order is affirmed insofar as it denied Nancy Shaw's anti-SLAPP motion and is reversed insofar as it denied Kenton's request for attorney fees. On remand, following a noticed hearing, the trial court shall award Kenton reasonable attorney fees incurred in opposing the anti-SLAPP motion. Kenton shall recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

On March 26, 2004, the opinion was modified to read as printed above.

---

[10] Kenton, in his cross-appellant's reply brief, first raises the issue of sanctions on appeal, contending Nancy Shaw's appeal is frivolous. Ordinarily, an appellant's failure to raise an issue in its opening brief waives the issue on appeal. (*Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361 [282 Cal.Rptr. 330].) Therefore, this contention merits no discussion.

[11] We cannot help but observe the increasing frequency with which anti-SLAPP motions are brought, imposing an added burden on opposing parties as well as the courts. While a special motion to strike is an appropriate screening mechanism to eliminate meritless litigation at an early stage, such motions should only be brought when they fit within the parameters of section 425.16.