Filed 9/16/25  Sabi v. Leonard CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KENDRA SABI et al., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DENNIS LEONARD, <br><br> Defendant and Appellant. | 2d Civ. No. B337916 <br> (Super. Ct. No. 23PR-0079) <br> (San Luis Obispo County) |

Appellant, Dennis Leonard, appeals from the trial court's order denying his anti-SLAPP motion.  He contends the conduct giving rise to respondent Kendra Sabi's causes of action is protected activity.  We disagree and will affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

*2012 Trust Documents*

The late Janice Pankey Tannehill ("Janice") held a sizeable estate, including two LLCs "holding title to multiple large parcels

---

[1] "As we are deciding the appeal under the first step of the anti-SLAPP analysis, we derive the facts primarily from the

of real property."  Janice had four children:  Lora, Chadburn, James, [2] and Sabi.

Appellant Leonard is an attorney.  He began working with Janice in 2012 to update her estate planning documents. Leonard prepared a Durable Power of Attorney for Assets naming Sabi as Janice's attorney-in-fact, effective upon incapacity ("2012 DPOA").  Incapacity would be decided either by a finding of a court or "upon certification by two physicians . . . that [Janice is] unable to properly care for [herself or her] property, which certification shall be made by each physician in a written declaration under penalty of perjury."

The 2012 DPOA specified "[t]he authority given to my agent has no expiration date and shall expire only in the event that I revoke the authority in writing . . . ."  It designated Sabi as agent and granted her authority to deal with financial institutions, employ and remove others (including an attorney), "take custody of all my important documents," litigate, and initiate court proceedings.  The 2012 DPOA gave Sabi "full power and authority to perform all necessary acts on my behalf as fully as if I were personally present and able to act . . . ."

*Disagreements Arise About Janice's Capacity*

Janice's health changed dramatically after a fall in 2020 left her paralyzed.  She moved to a skilled nursing facility so she could receive 24 hour care.  In April 2021, nursing home staff

---

allegations of [Sabi's] petition and refer to declarations and other evidence presented only to determine what conduct is being challenged."  (*Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1006.)

[2] We use some of the family members' first names for clarity.  No disrespect is intended.

2

found Janice unresponsive and transferred her to a hospital. She presented with an "altered mental status." Thereafter, she remained dependent on others for all daily living activities, including toileting, bathing, dressing, and eating.

Sabi emailed Leonard in May 2021, stating Janice "is . . . unable to make medical and financial decision[s] related to her cognition." Leonard emailed two invoices to Sabi with an "invoice for the last two months, which I am sending to you as the agent under [Janice's] power of attorney." Sabi obtained a physician's letter in August of 2021 attesting that Janice could not properly care for herself or her property. Sabi sent this letter to Leonard five days later. Leonard responded that Janice "explicitly" instructed him to not share her estate planning documents with anyone. Sabi's attorney emailed Leonard on February 16, 2023. He referred to Sabi as Janice's "attorney-in-fact" and requested Leonard send Janice's estate planning documents. Leonard responded he still represented Janice and she had instructed him not to share the documents.

A second physician attested to Janice's incapacity on February 28, 2023. Sabi's attorney notified Leonard by email and stated Sabi would now act as Janice's attorney-in-fact. It directed Leonard to "immediately cease and desist any further direct communications with [Janice]" because she "lacks capacity and therefore you no longer have a client to represent." A week later, Leonard prepared amended trust documents naming Chadburn and Lora as co-trustees. He met with Janice, Chadburn, James, and two of the brothers' acquaintances on March 10 at Janice's health care facility. There he helped Janice execute amendments to two LLC operating agreements, naming Chadburn and Lora as co-managers. She also executed a new

DPOA appointing Chadburn and Lora as co-attorneys-in-fact. Leonard arranged for a different physician to evaluate Janice, who later opined she retained "capacity to make testamentary and simple contractual decisions."

Leonard emailed Sabi's counsel on March 13, 2023 asserting the new DPOA "expressly revoked" the 2012 DPOA. He claimed to still represent Janice.

*Current Action*

Sabi filed this action individually and in her capacity as co-trustee of Janice's trust. She alleged five "causes of action": (1) the March 2023 documents were invalid for lack of capacity during execution; (2) relief from undue influence; (3) financial elder abuse; (4) removal of her brothers as co-trustees; and (5) suspension of her brothers as co-trustees while the petition for removal was pending. Sabi amended the petition to name Leonard as a respondent in the first three causes of action.

*Leonard's Anti-SLAPP Motion*

Leonard moved for an order striking Sabi's amended petition pursuant to the anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[3] Leonard argued the three causes of action against him arose from "his representation of [Janice] 'in matters that are intimately intertwined and connected with this probate litigation.'" The court denied the motion after concluding Leonard failed to meet his burden to show his actions arose from protected activity. It viewed Leonard's preparing and facilitating the execution of the March 2023 documents—not his representation of Janice in anticipation of litigation—as the basis

---

[3] Undesignated statutory references are to the Code of Civil Procedures.

4

of the claims.  As such, Sabi did not bear the burden to show a likelihood of prevailing on the merits.

The court rejected Leonard's argument that Sabi named him as a defendant in retaliation for representing Janice.  It found the protected activities Leonard referred to "postdate[d] the events in the complaint on which [Sabi's] claims arose."

DISCUSSION

*Anti-SLAPP Statute*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055).  "The anti-SLAPP statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . .' (Code Civ. Proc., § 425.16, subd. (b)(1).)" (*Dignity Health v. Mounts* (2024) 105 Cal.App.5th 113, 119 (*Dignity*).)

"Deciding whether to grant an anti-SLAPP motion to strike requires the court to conduct a two-step inquiry.  At the first step, the moving defendant has the burden to establish that the claims alleged against it 'arise from' one or more of the statutorily defined categories of protected activity.  [Citations.]  [¶]  At the second step, the burden shifts to the plaintiff to demonstrate 'a probability that [he or] she would prevail on the particular claim' . . . [¶]  In conducting this inquiry, the court does not weigh evidence or resolve conflicting factual claims.  [Citation.]  The court 'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's

5

claim as a matter of law.' [Citation.]" (*Dignity*, *supra*, 105 Cal.App.5th at p. 119.)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

*Sabi's Claims Against Leonard*
*Do Not Arise From Protected Activity*

The anti-SLAPP statute protects: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body . . . ." (§ 425.16, subd. (e).)

An anti-SLAPP motion "may only target claims 'arising from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . .' (§ 425.16, subd. (b).)" (*Park*, *supra*, 2 Cal.5th at p. 1062.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (*Id.* at pp. 1062-1063 [quoting *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78].) Activity that is "just evidence of liability or a step leading to some different act for which liability is asserted" is not subject to a motion to strike. (*Park* at p. 1060.) "[T]he focus is on determining what 'the

6

defendant's activity [is] that gives rise to his or her asserted liability —and whether that activity constitutes protected speech or petitioning.'" (*Id.* at p. 1063.)

As the moving party, it is Leonard's burden to show his challenged conduct arose from protected activity. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 194.)

The conduct forming the basis for each of the three causes of action against Leonard is that he assisted Chadburn and James in "implement[ing] a scheme to take advantage of [Janice's] incapacity and have [Sabi] removed as [Janice's] attorney-in-fact and as a Co-Trustee of the Trust through the preparation and execution of a new DPOA and Trust amendment." The petition alleges Leonard assisted by refusing to give Sabi copies of Janice's estate planning documents despite knowing of Janice's incapacity, and by drafting amendments to Janice's estate planning documents removing Sabi from all positions, at the behest of Chadburn and James, who then "unduly influenced" Janice to partially sign the documents. The trial court determined these actions were not taken "in preparation of anticipated litigation." We agree.

Sabi's claims arise from Leonard's activities undertaken to change Janice's estate plan—not "'in furtherance of the right [to] petition.'" (*Moore v. Shaw, supra,* 116 Cal.App.4th at p. 195 [drafting an agreement terminating a trust did not occur or arise in connection with pending or imminent litigation and therefore was not "'an act in furtherance of the right of petition or free speech'"].) Leonard's conduct, instead, is "just evidence of liability." The fact that Sabi filed suit in response to Leonard's conduct does not transform this conduct into protected activity. (See *Park, supra,* 2 Cal.5th at pp. 1061, 1063. ["'[T]he mere fact

7

that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'"]; *City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 78 ["[t]hat a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such"].)

Leonard contends his conduct was in furtherance of litigation because he presented evidence his motive was to *avoid* litigation. First, we cannot see how assisting Chadburn and James in altering Janice's estate planning documents after knowing Sabi believed Janice lacked capacity would *avoid* litigation and not foment it. Moreover, Leonard's contention that "[i]t cannot be disputed that litigation was anticipated between [Sabi] and Janice if [Sabi] did not get her way" finds no support in the record. Second, and more to the point, even if one broadly construes section 425.16, subdivision (a), estate planning *qua* estate planning is not in furtherance of any litigation, even if its motive is to avoid litigation. (See *White v. Davis* (2023) 87 Cal.App.5th 270, 290, fn. 18.)

Leonard also contends the trial court erred when it did not consider that Sabi named him as a Doe respondent due to his continued representation of Janice in the pending litigation. This does not matter. "[A] party's subjective intent or motivation for filing a lawsuit is not relevant to determining whether that lawsuit arose from an act in furtherance of the right to petition for free speech." (*Callanan v. Grizzly Designs, LLC* (2022) 81 Cal.App.5th 517, 529.)

Leonard has failed to carry his burden to show his challenged conduct arises from protected activity. As such, we

need not consider whether Sabi has shown a probability of prevailing on the merits.

DISPOSITION

The trial court's order denying Leonard's anti-SLAPP motion is affirmed.  Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Tana L. Coates, Judge
Superior Court County of San Luis Obispo

_____


Nemecek & Cole, Michael W. Feenberg, Mark Schaeffer, and Vikram Sohal, for Leonard.

Gokal Law Group, Ronald V. Larson, Abbas K. Gokal, and Nicholas D. Porrazzo, for Respondent.