[No. A120912. First Dist., Div. Four. Mar. 12, 2009.]

UNITED STATES FIRE INSURANCE COMPANY, Plaintiff and Respondent, v.
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Defendant and Appellant.

## COUNSEL

Sheppard Mullin Richter & Hampton, D. Ronald Ryland, Robert J. Stumpf, Jr., and Timothy C. Perry for Defendant and Appellant.

Musick, Peeler & Garrett, Susan J. Field, Lawrence A. Tabb and Stephen M. Green for Plaintiff and Respondent.

## OPINION

**RUVOLO, P. J.—**

### I. INTRODUCTION

Respondent United States Fire Insurance Company (U.S. Fire) sued to enjoin appellant Sheppard, Mullin, Richter & Hampton LLP (Sheppard

Mullin) from representing an informal committee of asbestos creditors, together with that committee's law firms, in a pending action to which U.S. Fire is a party, entitled *Plant Insulation Co. v. Fireman's Fund Ins. Co.* (Super. Ct. S.F. City and County, 2006, No. CGC-06-448618) (Plant Litigation). U.S. Fire claims that Sheppard Mullin has a disqualifying conflict of interest arising out of Sheppard Mullin's former representation of U.S. Fire in the matter of *Kelly-Moore Paint Co., Inc. v. Liberty Mutual Ins. Co.* (Super. Ct. S.F. City and County, 2009, No. CGC-01-325147) (Kelly-Moore Litigation).

Sheppard Mullin filed a special motion to strike the complaint (a so-called anti-SLAPP motion (strategic lawsuit against public participation)) pursuant to Code of Civil Procedure section 425.16 (section 425.16), contending that its legal representation in the Plant Litigation is protected activity, and U.S. Fire cannot show a probability that it would succeed on the merits of its claim. The trial court concluded that this action interferes with Sheppard Mullin's right to petition, and thus, is protected activity under the anti-SLAPP law. However, the trial court went on to conclude that U.S. Fire satisfied its burden to show a probability of success as to the merits of its claim, and therefore denied the anti-SLAPP motion. We disagree with the trial court's conclusion that U.S. Fire's complaint arises out of protected activity, and so affirm the ruling denying the motion, but on other grounds.[1]

## II. FACTS AND PROCEDURAL BACKGROUND

### A. The Complaint

U.S. Fire's complaint in this case alleges that it is an insurance company that was sued as a defendant in the Kelly-Moore Litigation in 2001. In that case, U.S. Fire's "putative insured," Kelly-Moore Paint Company, Inc. (Kelly-Moore), claimed that U.S. Fire had duties to defend and indemnify it against asbestos-related bodily injury actions brought against Kelly-Moore. Kelly-Moore, it is alleged, sought "to maximize the amount of insurance benefits U.S. Fire may be forced to pay for such asbestos actions to amounts in excess of what is owed by U.S. Fire under its insurance contracts. The interpretation of general liability insurance policy provisions under California law, and facts relating to the defense and settlement of underlying asbestos actions, are at the heart of the [Kelly-Moore Litigation]."

The complaint also alleges that Sheppard Mullin represented U.S. Fire in the Kelly-Moore Litigation for a period of approximately two and one-half

---

[1] In light of our conclusion that the complaint does not arise out of protected activity, we need not, and do not, address whether U.S. Fire satisfied its burden of showing a likelihood that it will prevail on the merits of its claim that a disqualifying conflict of interest exists.

years, during which U.S. Fire entrusted Sheppard Mullin with confidential information. This confidential information included "U.S. Fire's litigation strategies, its policies and positions concerning interpretation of insurance policy terms involved in asbestos related bodily injury claims and lawsuits, its settlement negotiation policies and strategies, and the identity of key U.S. Fire decision makers."

The complaint alleges further that, in 2006, U.S. Fire was sued as a defendant in the Plant Litigation. The Plant Litigation is a declaratory relief action by Plant Insulation Company (Plant) "concerning the existence and scope of benefits" allegedly owed by Plant's insurers, including U.S. Fire, for pending and future asbestos-related bodily injury lawsuits. "Like Kelly-Moore in the Kelly-Moore Litigation, Plant also seeks . . . to maximize the amount of insurance benefits U.S. Fire may be forced to pay for such asbestos actions. As in the Kelly-Moore Litigation, the interpretation of U.S. Fire policy provisions under California law and the conduct of underlying asbestos actions are at the heart of the Plant Litigation."

According to the complaint, Sheppard Mullin is representing, in the Plant Litigation, "the informal committee of asbestos creditors," and two law firms providing legal representation to the creditors in their asbestos lawsuits against Plant: Brayton Purcell, LLP, and Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, PLC (Brayton/Kazan). This representation came to light when U.S. Fire learned that Sheppard Mullin had agreed to defend Brayton/Kazan against subpoenas served on the firms in the Plant Litigation seeking communications between counsel for the asbestos claimants/creditors and counsel for Plant. The communications sought were relevant to, among other issues, the extent of cooperation between claimants' and Plant's counsel in their efforts to "maximiz[e] the amount of insurance benefits that may potentially be owed by U.S. Fire and other insurers in the Plant Litigation." U.S. Fire's complaint in the present case alleges that, because of Sheppard Mullin's prior representation of U.S. Fire in the *Kelly-Moore Litigation*, Sheppard Mullin has a conflict of interest that disqualifies it from playing its current role in the Plant Litigation.

In the course of representing Brayton/Kazan, Sheppard Mullin is alleged to have characterized the relationship between the asbestos claimants/creditors and Plant as follows: " 'Plant and the community of claimants holding asbestos claims against Plant share a common interest with respect to this Action, i.e., a ruling from [the trial court] construing the policies as broadly as possible and finding that Plant has the maximum amount of insurance coverage available to it with respect to and for coverage of asbestos claims asserted against Plant.' "

Counsel for Plant allegedly took a similar position in its opposition to a motion to compel production of communications between Plant's lawyers and the claimants/creditors' lawyers: " 'Plant, as the insured, and the Claimants as the injured parties, share a legal interest in the determination of coverage. Plant wants as many cases covered as possible. The Claimants want as many of their cases covered as possible. The insurers want rulings in this case that will minimize the number of cases covered under their policies. Their interests here are adverse to those of Plant and the Claimants in [the Plant Litigation].' "

U.S. Fire's complaint also alleges that, in both the Kelly-Moore Litigation and the Plant Litigation, the same type of insurance policy provisions are in issue, and the same type of legal arguments will be advanced by both sides. Therefore, it concludes, Sheppard Mullin possesses confidential information by virtue of its representation of U.S. Fire in the Kelly-Moore Litigation "in the evaluation, prosecution, and/or settlement of claims concerning the Plant Litigation." As a result of these events, U.S. Fire alleges, a conflict of interest exists giving rise to breaches of the duties of confidentiality and loyalty owed by Sheppard Mullin to U.S. Fire. The prayer seeks an order preliminarily and permanently enjoining Sheppard Mullin from representing "the committee of asbestos creditors, their counsel, or any related persons or entities in connection with the Plant Litigation." The prayer also contains a general request for damages unspecified except to allege that such damages resulted from the breach of the duties of loyalty and confidentiality owned to plaintiff by Sheppard Mullin.

## B. Sheppard Mullin's Anti-SLAPP Motion

In response to the complaint, Sheppard Mullin filed a special motion to strike asserting that it was entitled to a dismissal because the complaint arises from acts of Sheppard Mullin in furtherance of its right of petition and free speech, and because U.S. Fire cannot show a probability that it would prevail on its claim. Included with the evidence[2] proffered in support of the motion was the declaration of a Sheppard Mullin partner, Steven B. Sacks, who confirmed that Sheppard Mullin had been engaged to represent the informal asbestos creditors' committee and Brayton/Kazan.[3] However, Sacks maintained that Sheppard Mullin had not been retained by Brayton/Kazan to

---

[2] Each side interposed a number of objections to the declarations presented by the opposing party in connection with the motion to strike. The court ruled on each of the objections. This opinion does not rely on facts asserted in portions of declarations that were ruled inadmissible by the trial court.

[3] Sheppard Mullin also conceded in the trial court that the subpoenas served on Brayton/Kazan were deemed to be served on behalf of all insurers in the Plant Litigation, including U.S. Fire.

provide any insurance coverage advice in the Plant Litigation, and the firm had not participated in the litigation of such issues.[4]

A declaration from another Sheppard Mullin partner, Philip F. Atkins-Patterson, also accompanied the motion. Atkins-Patterson was the lead counsel for Sheppard Mullin in the Kelly-Moore Litigation. In support of its anti-SLAPP motion, Sheppard Mullin also filed a declaration by Sheppard Mullin partner Michael H. Ahrens explaining the nature of Sheppard Mullin's work in a series of asbestos-related bankruptcy matters, including proceedings involving Western Asbestos and the bankruptcy of J.T. Thorpe where Sheppard Mullin again represented the creditors' committee. The Sheppard Mullin attorneys vigorously denied that a conflict of interest existed. In addition, they pointed out that an ethical wall had been erected isolating the bankruptcy team in the Plant Litigation from contact with the files and those who worked on the Kelly-Moore Litigation.

In opposition to Sheppard Mullin's anti-SLAPP motion, U.S. Fire filed a declaration by U.S. Fire vice-president of claims Patricia Noll. Her declaration averred that Sheppard Mullin did not obtain a waiver of any conflict of interest from U.S. Fire at the time Sheppard Mullin undertook its representation of the creditors' committee. Noll also enumerated the types of legal services provided to U.S. Fire by Sheppard Mullin in connection with the Kelly-Moore Litigation from July 2003 through March 2006.

U.S. Fire's evidence in opposition to Sheppard Mullin's anti-SLAPP motion also included a declaration from Mark Goodman, a law partner in the firm of Squire, Sanders & Dempsey LLP, which replaced Sheppard Mullin as counsel for U.S. Fire in the Kelly-Moore Litigation in 2006. Goodman stated that, at the conclusion of its representation, Sheppard Mullin turned over 260 boxes of documents to Squire, Sanders & Dempsey, which included, among other things, "substantive reports prepared by [Sheppard Mullin] concerning U.S. Fire's litigation strategies, settlement strategies, liability analysis, certain discovery propounded & responded to by [Sheppard Mullin] on behalf of U.S. Fire; and dispositive motions filed and opposed by [Sheppard Mullin]."

---

[4] Sacks also made the point in his declaration that at no time did anyone representing U.S. Fire comment negatively on the fact that Sheppard Mullin was representing Brayton/Kazan. However, in light of the fact that no assertion is made that U.S. Fire is estopped from raising, or waived, any conflict by not seeking the disqualification of Sheppard Mullin more promptly, this point is largely irrelevant to the narrow issue we decide here. (*River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297 [234 Cal.Rptr. 33]; *Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 763–764 [261 Cal.Rptr. 100].)

After receiving the parties' briefs, the trial court issued an order requesting the parties to address 11 additional questions. The parties separately responded, and the trial court conducted a hearing on the special motion to strike on December 4, 2007. At the conclusion of the hearing, the court orally confirmed its tentative ruling,[5] and then issued a written order on February 6, 2008. As to the issue we decide, the court concluded that the first prong of the analysis required in determining an anti-SLAPP motion had been satisfied. Relying on *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 [35 Cal.Rptr.3d 31] (*Peregrine Funding*), the court concluded that the complaint "implicates" protected activity.

## III. DISCUSSION

Like many intermediate appellate courts of this state, we have recently discussed California's anti-SLAPP statute at considerable length, and have set forth in detail the applicable standard of review. As our colleagues in Division Two explained in *Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604 [39 Cal.Rptr.3d 21] (*Tutor-Saliba*), " 'Section 425.16, commonly referred to as the anti-SLAPP law, provides in relevant part: "(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly. [¶] (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] . . . [¶] (e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the

---

[5] The tentative ruling is not in the record provided by the parties on appeal.

constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

■ " 'Under the statute, the court makes a two-step determination: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1) . . . .)" [Citations.] "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." [Citation.]

" 'A ruling on a special motion to strike under section 425.16 is reviewed de novo. [Citation.] This includes whether the anti-SLAPP statute applies to the challenged claim. [Citation.] Furthermore, we apply our independent judgment to determine whether [plaintiff's] causes of action arose from acts by [defendant] in furtherance of [defendant's] right of petition or free speech in connection with a public issue. [Citation.] Assuming these two conditions are satisfied, we must then independently determine, from our review of the record as a whole, whether [plaintiff] has established a reasonable probability that he would prevail on his claims. [Citation.]' [Citation.]" (*Tutor-Saliba, supra,* 136 Cal.App.4th at pp. 608–610, quoting *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 644–645 [24 Cal.Rptr.3d 619], italics omitted.)

■ More recently, another court, in affirming the denial of an anti-SLAPP motion, noted that "[t]he principal thrust or gravamen of a cause of action determines whether the anti-SLAPP statute applies. [Citation.] 'The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petition-ing.' [Citation.] The anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint. [Citation.]" (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1036–1037 [73 Cal.Rptr.3d 268], original italics (*California Back Specialists*).)

■ In *California Back Specialists*, a medical lien holder sued an attorney who had represented two personal injury plaintiffs who received medical treatment from the lien holder. The complaint charged that the attorney improperly failed to notify the lien holder of the settlement of the underlying

personal injury action, and wrongfully disbursed the settlement proceeds to the clients without withholding funds owed the lien holder. (*California Back Specialists, supra,* 160 Cal.App.4th at p. 1035.) In concluding that the attorney's alleged actions were not protected activity, the court noted: "Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16. [Citations.]" (*Id.* at p. 1037.) In support of this conclusion, the court relied on three previous cases: *Freeman v. Schack* (2007) 154 Cal.App.4th 719 [64 Cal.Rptr.3d 867]; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 [20 Cal.Rptr.3d 621] (*Benasra*); and *Moore v. Shaw* (2004) 116 Cal.App.4th 182 [10 Cal.Rptr.3d 154], the first two of which are particularly instructive here.[6]

*Freeman v. Schack, supra,* 154 Cal.App.4th 719, involved facts very close to this case. There, a lawyer was sued by two clients for breach of contract, breach of fiduciary duty, and professional negligence, based on allegations that he had entered into an attorney-client relationship with one of the plaintiffs, but abandoned that representation in order to assume the role of attorney in the same litigation, as well as a second matter, for another client, the other plaintiff. The trial court granted the attorney's special motion to strike on several grounds, including that the acts on which the suit was based constituted protected activity under the anti-SLAPP statute. (*Id.* at pp. 722–723.)

In reversing the trial court's decision, the appellate court disagreed that the "principal thrust" of the complaint related to actions taken by the attorney in the course of the second representation, including the filing or settlement of that litigation: "[T]he 'activity that gives rise to [Schack's] asserted liability' [citation] is his undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty[7] he assertedly owed them in connection with the [original] litigation. '[I]f the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion.' [Citation.] In our view, plaintiffs' allegations concerning Schack's filing and settlement of the [second] litigation are incidental to the allegations of breach of contract, negligence in failing to properly represent their interests, and breach of fiduciary duty

---

[6] In *Moore v. Shaw, supra,* 116 Cal.App.4th at pages 195–197, the court held that an attorney's act of drafting a document that improperly allowed a trustor to terminate a trust prematurely was not protected activity within the meaning of the anti-SLAPP law.

[7] The Supreme Court has recently reaffirmed the principles that the "primary value" at stake in cases involving successive conflicts of interest is that of confidentiality, while the chief value extant in concurrent conflict cases is that of client loyalty. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159–160 [84 Cal.Rptr.3d 597, 194 P.3d 330].)

arising from his representation of clients with adverse interests." (*Freeman v. Schack, supra*, 154 Cal.App.4th at p. 732.)

In *Benasra, supra*, 123 Cal.App.4th 1179, the plaintiffs were former clients of the defendant law firm who sued both the firm and individual lawyers in it, alleging that the defendants had breached a duty owed to them when they accepted the representation of a subsequent client that had interests adverse to the plaintiffs. The lawyers filed an anti-SLAPP motion, arguing that the protected activity which formed the basis of the former client's suit consisted of statements made by the attorneys during the course of the subsequent representation. (*Id.* at p. 1186.) The appellate court disagreed, noting that the claim was based on violation of rules 3-310(C) and 3-310(E) of the State Bar Rules of Professional Conduct,[8] which did not turn on whether any confidences of the former client were actually revealed by the attorneys during the subsequent, adverse representation. (*Benasra*, at p. 1187.) Citing its earlier decision in *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017 [117 Cal.Rptr.2d 685], the court stated that breaches of loyalty alleged as a result of violations of conflicts of interest rules of professional responsibility occur regardless of whether confidences are actually revealed in the adverse action. (*Benasra, supra*, 123 Cal.App.4th at p. 1187.)

Because the breach of loyalty is presumed, the court emphasized that the misconduct was not what occurs in the courtroom during the second representation, but the very acceptance of that adverse engagement. "The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. Therefore, respondents' argument that section 425.16 applies to this tort must fail. In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it. Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim. As appellants so aptly put it, their claim is not based on 'filing a petition for arbitration on behalf of one client against another, but rather, for failing to maintain loyalty to, and the confidences of, a client.' " (*Benasra, supra*, 123 Cal.App.4th at p. 1189.)

■ The applicable ethical rule itself supports the conclusion reached in these cases. Rule 3-310(E) recognizes that the disqualifying event in a successive conflict of interest scenario is the acceptance of the adverse

---

[8] All further undesignated rule references are to California's State Bar Rules of Professional Conduct.

relationship alleged to be substantially related to the former representation. The rule states explicitly that the conflict arises as soon as the adverse relationship is accepted by the attorney: "A member shall not, without the informed written consent of the client or former client, *accept employment* adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." (Rule 3-310(E), italics added.)

■ U.S. Fire's complaint against Sheppard Mullin focuses on the attorney-client relationship between them, and seeks relief based on a claim of successive representation conflict of interest in violation of rule 3-310(E). While the complaint describes in detail the nature of confidential information allegedly learned by Sheppard Mullin as a result of its representation of U.S. Fire in the Kelly-Moore Litigation, it does not, and did not need to, allege that actual disclosure of U.S. Fire's confidences has occurred in the Plant Litigation. Therefore, the principal thrust of the misconduct averred in the underlying complaint is the acceptance by Sheppard Mullin of representation adverse to U.S. Fire. To the extent the complaint refers to events taking place during Sheppard Mullin's participation in the Plant Litigation, its evident purpose is to support the conclusion that the two matters are substantially related, therefore making Sheppard Mullin's disqualification in that litigation automatic. Thus, reference to protected activity is only incidental to the principal thrust of the complaint.

In finding that U.S. Fire's complaint arose out of protected activity, the trial court relied on *Peregrine Funding, supra,* 133 Cal.App.4th 658. *Peregrine Funding* is a tort action, and not one arising out of an alleged attorney conflict of interest. The plaintiffs were investors who claimed they lost millions of dollars in a large Ponzi scheme. They sued those allegedly responsible for the loss, including Sheppard Mullin, against which they alleged "negligence and affirmative misconduct [which] helped the perpetrators of the scheme avoid detection and prosecution by securities regulators." (*Id.* at p. 665.)

Division Three of this court reversed the trial court's denial of Sheppard Mullin's anti-SLAPP motion, concluding that the plaintiffs' claims were partially based on protected activity. (*Peregrine Funding, supra,* 133 Cal.App.4th at pp. 665–666.) The court summarized the charging allegations made by the plaintiffs, and found that they fell within two broad courses of conduct. One was "comfort" letters, in which Sheppard Mullin counseled the investment company, its client, on strategies to avoid federal and state registration requirements. The second involved Sheppard Mullin's representation of clients in an SEC (Securities and Exchange Commission) investigation of financial defalcation by the company. (*Id.* at pp. 670–671.)

Thus, the case did not involve a claim of liability based on a professional conflict of interest. Rather, the "principal thrust" of the complaint against Sheppard Mullin was its specific conduct during the representation, which the court held was protected activity within the meaning of the anti-SLAPP statute.

Sheppard Mullin emphasizes that the court in *Peregrine Funding* questioned "the *Benasra* decision's focus on the theoretical time that a breach of duty occurs." (*Peregrine Funding, supra*, 133 Cal.App.4th at p. 674.) Given that *Benasra* was a legal malpractice action, the *Peregrine Funding* court pointed out that the plaintiffs were required to prove causation and damages which must relate to "the specific allegations of wrongdoing in the operative complaint." (*Ibid.*) But, the *Benasra* opinion does not indicate what damages were sought, or whether they were caused by accepting the adverse engagement or based on subsequent, specific conduct, which might, or might not, be protected. As that court noted, "[e]vidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim." (*Benasra, supra*, 123 Cal.App.4th at p. 1189.)[9]

Moreover, in our view *Benasra*'s focus was not on the timing of the breach of duty involved in a conflict of interest, but on the nature of that breach of duty, which occurs by virtue of the act of entering into an attorney-client relationship rather than through any protected speech or petitioning activity performed in the course of such a relationship. In any event, *Peregrine Funding* involved facts and allegations importantly different from those in this case, and is inapposite.

Accordingly, because the allegations on which U.S. Fire's complaint is based do not involve protected activity under section 425.16, we affirm the denial of Sheppard Mullin's anti-SLAPP motion.

---

[9] Sheppard Mullin makes much of the fact that U.S. Fire's complaint included a claim for damages, asserting that the effort to recover damages is indicative of the fact that the complaint arises out of conduct of the firm resulting from its litigation activities. Viewing the allegations of the complaint as a whole, we disagree that the inclusion of a nonspecific prayer for damages is sufficient reason to conclude that the gravamen of the complaint challenges Sheppard Mullin's litigation activities. Instead, we agree with U.S. Fire that the primary objective of the complaint is to stop Sheppard Mullin from participating *at all* in the Plant Litigation given its duty of loyalty to the insurer. As we have stated earlier, the specific allegations appear necessary principally to prove that a conflict of interest exists.

## IV. DISPOSITION

The order denying Sheppard Mullin's special motion to strike is affirmed. Costs on appeal are awarded to U.S. Fire.

Reardon, J., and Rivera, J., concurred.

A petition for a rehearing was denied March 26, 2009, and the opinion was modified to read as printed above.