Filed 2/26/14  Bram v. Kaplan CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ADAM SCOTT BRAM et al., | B245554 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC117253) |
| v. | |
| MARK VINCENT KAPLAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Adam Scott Bram, in pro. per., and for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Janette S. Bodenstein for Defendants and Respondents.

_____

Plaintiffs and appellants Adam Scott Bram, on behalf of himself, his law firm (Law Offices of Adam Scott Bram), and Penelope Joe Bram, a minor, appeal from a judgment in favor of defendants and respondents Mark Vincent Kaplan, Kaplan & Simon, L.L.P. (K&S), Shelley Lewis Albaum, and Brot & Gross, L.L.P. (B&G), following orders granting their special motions to strike Bram's complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1]  Bram contends the gravamen of his complaint consists of unprotected criminal activity by defendants; therefore, the anti-SLAPP statute does not apply.  We conclude each cause of action includes claims based on protected activities under the anti-SLAPP statute; therefore, the trial court properly applied the statute.  Bram did not submit admissible evidence to show a probability of prevailing on any of his claims.  Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

**Allegations of the Complaint**

On June 1, 2012, Bram filed a 57-page complaint against defendants for breach of fiduciary duty, negligent misrepresentation, abuse of process, unfair business practices, unjust enrichment, conspiracy to defraud, and a declaration of constructive trust.  The complaint alleged additional causes of action against Kaplan and K&S for intentional misrepresentation and defamation.  The allegations of the complaint are as follows in pertinent part.

Bram's law firm is a sole proprietorship.  The law firm hired Sarah Evelyn Kitch in 2005.  Between 2005 and March 7, 2008, Bram loaned more than $150,000 to Kitch,

---

[1]  "SLAPP is an acronym for 'strategic lawsuit against public participation.' [Citation.]"  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 816, fn. 1.)  All further statutory references are to the Code of Civil Procedure, unless otherwise stated. In addition, Bram's request for judicial notice of the appellate record in his dissolution action, case No. B245554, is granted.

which she has not repaid. Bram and Kitch married on March 7, 2008, and had a daughter. Kitch induced Bram to designate her as a joint owner on personal accounts containing his separate property funds.

On February 1, 2010, Kitch began consulting with attorneys B&G and Albaum as to the nature of the funds and the amounts to seize. Kitch took $512,679.49 from the accounts. By the date of separation on February 10, 2010, Kitch had transferred all of Bram's separate funds. Defendants conspired with Kitch to take the separate property funds and use them to pay defendants for Kitch's child custody litigation.

Immediately after, Kitch, Albaum, and B&G assured Bram that Kitch would comply with the Family Law Automatic Temporary Restraining Orders by not using his separate property funds over which she had asserted control. On March 4, 2010, Kitch filed for dissolution. On March 30 and July 6, 2010, Kitch, Albaum, and B&G represented that Kitch had not used any of the funds. In reliance on these representations, Bram did not try to recover the funds, made support payments to Kitch, and paid her bills for several months.

Kitch manually copied 12 months of the law firm's invoices containing attorney-client privileged information and work-product material, then gave the copies to the attorney defendants. Kitch took a computer belonging to Bram's law firm and used financial records contained on the stolen computer to prepare documents for litigation showing the law firm's revenue. Kitch had access to the law firm's financial revenue in the course of her duties as an employee. The trial court ordered the computer returned to Bram, but the financial accounting data was erased.

On July 8, 2010, Kaplan and K&S substituted in to represent Kitch in place of Albaum and B&G. On three occasions, Kitch requested the trial court impute income to Bram based on her forensic accounting expert's declaration that Bram had produced insufficient financial information for his law firm.

On January 19, 2011, Bram filed an ex parte application for an order compelling the return of his separate property funds, and Kitch and her attorneys stated that Kitch had exhausted Bram's funds, but she had not. She began rapidly spending the funds. On

3

January 21, 2011, Kitch levied upon Bram's personal and business bank accounts, representing that Bram owed $20,334.54 to her. On February 2, 2011, the trial court issued an intermediary order directing Kitch to return $5,000 to Bram.

On February 15, 2011, Bram filed a fraud action against Kitch based on these facts and false representations. The fraud action was coordinated with the dissolution proceeding on March 24, 2011. Kaplan and K&S filed Bram's confidential drug testing results without placing them under seal in order to harass and intimidate Bram.

In July 2011, Kitch, Kaplan, and K&S testified that Kitch had created the revenue summary for Bram's law firm from summaries of bills. Kaplan and K&S ultimately returned the invoices. Albaum and B&G also produced a copy of the invoices. On August 30, 2011, Kaplan and K&S substituted out as to the fraud action, and Kitch proceeded in the fraud action in pro per.

Income and expense statements that Kitch filed in December 2011 misrepresented Kitch's expenses and assets. She stated that she owed Kaplan and K&S more than $269,428.

In January 2012, Kitch filed a claim with the California Department of Child Support Services (DCSS) alleging child support arrearages of $131,238.50. She acknowledged that she had taken the funds but claimed she and Bram agreed that she could have those funds if something went wrong, and Bram owed child support in addition to the funds that she took. Bram's driver's license and license to practice law were eventually suspended as a result of the claim made to DCSS.

As of February 29, 2012, Kitch had incurred $328,924.13 in attorney fees owed to Kaplan and K&S, of which $59,496.13 had been paid. Kitch exhausted Bram's separate property funds on April 1, 2012. On April 6, 2012, Kaplan and K&S agreed to waive all legal fees due and owing as part of a settlement agreement between Bram and Kitch entered into on the record before the trial court. However, Kaplan and K&S received Bram's separate property funds or other funds to which he had a claim with full knowledge of Bram's claims, because as of April 25, 2012, Kitch owed nothing to

4

Kaplan or K&S. On June 1, 2012, Bram dismissed the fraud action against Kitch without prejudice.

As a result of Kitch's misconduct, she should have disgorged her entire salary for the period of her employment in the amount of $205,600, which defendants knew or reasonably should have known. Kitch denies any repayment obligation and reneged on agreements to return misappropriated funds. As a result, Bram had to borrow on credit cards, his credit rating dropped, and he was unable to secure financing.

Defendants conspired with Kitch to deprive Bram of the fiduciary duties Kitch owed under California law and to defraud Bram. They aided and abetted Kitch's violation of her fiduciary duties. They misrepresented to Bram and the trial court that Kitch had not used Bram's separate property funds. Defendants made unspecified defamatory statements about him. They were unjustly enriched by Kitch's transfer of funds to them. Bram sought restitution, disgorgement, and a constructive trust. Bram also sought damages of $990,628.

**Anti-SLAPP Motions and Supporting Evidence**

Kaplan and K&S filed an anti-SLAPP motion. They argued the anti-SLAPP statute applied, because Bram's complaint was based entirely on Kaplan and K&S's statements and conduct arising out of litigation activity. They further argued that Bram could not demonstrate a probability of prevailing for several reasons, including that he entered into a settlement agreement which included a release of known and unknown claims arising out of Kaplan and K&S's representation of Kitch. Kaplan and K&S also argued Bram lacked capacity to file the action on behalf of his minor daughter, because no guardian ad litem had been appointed.

Kaplan and K&S attached the reporter's transcript of the global settlement agreement reached on April 6, 2012, in the dissolution action in which Bram agreed to release claims known and unknown against Kaplan and K&S arising out of their

5

representation of Kitch in the dissolution action and the subject matter of Bram's fraud action against Kitch.

Albaum and B&G also filed an anti-SLAPP motion on the ground that Bram's claims arose from litigation activity on behalf of Kitch. Bram could not show a probability of prevailing, because the absolute litigation privilege barred his claims, Bram had not obtained a pre-filing order, and he lacked standing to sue on behalf of his minor daughter.

## Opposition and Supporting Evidence

Bram filed an opposition to each of the anti-SLAPP motions on the ground that the claims were based on criminal conduct, which is not protected activity under the anti-SLAPP statute. He argued the core charging allegations were actions before Kitch hired attorneys in the dissolution action or immediately upon hiring them. Alternatively, Bram could show a probability of prevailing on his claims that the attorneys aided and abetted stealing his funds, knowingly received stolen funds, received and concealed stolen property of the law firm, and lied to the trial court concerning the stolen property. He argued the litigation privilege did not apply, because defendants' statements were false. In support of his opposition, Bram submitted a brief declaration stating that all facts not otherwise supported by citations to the record or exhibits were true of his own personal knowledge. He also filed a request for the court to take judicial notice of a writ of mandate and exhibits that he had previously filed in another case.

## Replies and Trial Court Rulings

Kaplan and K&S filed a reply, as did Albaum and B&G. Both replies argued the gravamen of the complaint was protected activity representing Kitch, not criminal activity. In addition, they argued that once they had shown the complaint was based on protected activity, Bram had the burden to show the alleged conduct was illegal as a

matter of law, and Bram failed to meet this burden. They asserted Bram had not provided the trial court with a shred of evidence to support his claim of conspiracy, aiding and abetting, receipt of stolen property, or any other criminal conduct by B&G, or evidence Kitch engaged in misappropriation or fraud. In addition, Bram had not provided any admissible evidence to support a reasonable probability of prevailing on his claims. The cases he relied upon were distinguishable. Kaplan and K&S also noted Bram failed to address the settlement agreement releasing the claims in the dissolution action.

Kaplan and K&S submitted the declaration of Attorney Frances Ma that on August 24, 2012, the trial court in the dissolution action enforced a settlement agreement pursuant to section 664.6, including Bram's release of claims against K&S on his own behalf and on behalf of the minor child arising from events prior to April 6, 2012, known or unknown, in connection with Kitch's representation.

Albaum and B&G filed objections to Bram's declaration and request for judicial notice. They argued, among other grounds, that the trial court could not take judicial notice of the contents of documents in another case to which they were not parties and which were not the contents of a judgment. On September 10, 2010, Bram filed an additional declaration and request for judicial notice. Albaum and B&G filed a motion to strike this additional opposition. On September 13, 2012, the court sustained all of Albaum and B&G's objections to Bram's declaration and evidence. The court granted their anti-SLAPP motion on the ground the conduct in connection with the dissolution proceeding was protected under the anti-SLAPP statute, and Bram had failed to show the litigation privilege did not apply.

On September 20, 2012, the trial court similarly granted Kaplan and K&S's anti-SLAPP motion. Bram failed to submit relevant evidence to support his claims and failed to address the global settlement agreement reached in connection with the dissolution proceeding . The court also sustained Kaplan and K&S's objections to Bram's evidence.

The trial court entered judgment in favor of Albaum, B&G, Kaplan, and K&S on October 10, 2012. Albaum and B&G filed a motion for an award of attorney fees, as did Kaplan and K&S. The court awarded attorney fees of $30,800 to Albaum and B&G and

7

attorney fees of $19,250 to Kaplan and K&S.  Bram filed a timely notice of appeal from the judgment.

## DISCUSSION

Defendants contend Bram's lawsuit is based on protected litigation activity, and therefore, the anti-SLAPP statute applies.  Bram contends the allegations concerning litigation activity are merely incidental to the allegations of criminal activity which are unprotected, and therefore, the anti-SLAPP statute does not apply.  We review the legal principles applicable to our analysis and examine each cause of action alleged in Bram's complaint to determine whether the anti-SLAPP statute applies.

## I.  Statutory Scheme and Standard of Review

Section 425.16, subdivision (b)(1) provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"The statute requires two steps for striking a cause of action.  In the first step, the court is tasked with determining whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from protected activity.'  In this step, the moving defendant must demonstrate that the acts upon which the plaintiff's claim is based were taken in furtherance of the defendant's right of petition or free speech under the federal or state Constitution.  If the court finds this threshold showing has been made by the defendant, the court must then determine whether the plaintiff has demonstrated a 'probability of prevailing' on his or her claim.  ([See] *Equilon Enterprises v. Consumer*

*Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)" (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443 (*Gerbosi*).)

We review an order granting or denying a motion to strike under section 425.16 under the de novo standard of review, applying the same two-step procedure as the trial court. (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293; *Gerbosi*, *supra*, 193 Cal.App.4th at p. 444.)

### A. Protected Activity

"A cause of action 'arising from protected activity' means that the defendant's acts underpinning the plaintiff's cause of action involved an exercise of the right of petition or free speech. [Citation.] . . . In determining whether the first step has been established, i.e., the 'arising from' element of the anti-SLAPP statute, a court must consider the pleadings and any supporting and opposing affidavits stating the facts upon which alleged liability is based. [Citation.]" (*Gerbosi*, *supra*, 193 Cal.App.4th at p. 443.)

Section 425.16, subdivision (e) sets forth four categories of speech or petitioning activity protected under the statute. An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In order for defendants to meet their burden under the first prong, they do not need to prove their activity is constitutionally protected. (*Haight Ashbury Free Clinics, Inc. v.*

9

*Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1548-1549 (*Haight Ashbury*) [allegations that defendants conspired to lie in depositions and presented false testimony were within the scope of anti-SLAPP statute]; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [allegations were within scope of anti-SLAPP statute, even though the defendant had no constitutional right to disclose privileged and confidential information or refuse to return materials to their rightful owner].) "Appellants need only show that the activity falls within the scope of section 425.16, subdivision (e), by which the Legislature has set forth the parameters of activity subject to the SLAPP protections. [Citation.]" (*Haight Ashbury*, *supra*, 184 Cal.App.4th at p. 1549.)

"In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.) If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute. (*Ibid;* see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 478 [allegation that 'lurk[s] in the background' to explain why a rift between the parties arose]; *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [allegations about a law firm's protected communications for purposes of showing the firm had a conflict of interest]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414-417 [defendant's advertising activity was merely incidental to plaintiff's causes of action for personal injury, where liability for those claims was based not on the advertising but on the product's failure to conform to the defendant's warranties and statements].)" (*Haight Ashbury, supra*, 184 Cal.App.4th at p. 1550.)

"Where, as here, a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 '"unless the protected conduct is 'merely incidental' to the unprotected conduct."' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (*Peregrine Funding*) [first prong of SLAPP analysis met where the allegations of loss resulting from protected

10

activity were not merely incidental or collateral to unprotected activity]; see *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104 (*Mann*) [because the defendants' reports to government agencies formed a substantial part of the factual basis for defamation and trade libel claims, the claims were subject to the SLAPP statute even though also based on nonprotected statements].)" (*Haight Ashbury, supra*, 184 Cal.App.4th at p. 1551, fn. omitted.)

"[S]ection 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317 (*Flatley*).) "[W]hen a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law. In coming to this result, the Supreme Court observed that an activity could be deemed criminal as a matter of law when a defendant concedes criminality, or the evidence conclusively shows criminality. At the same time, the Supreme Court cautioned that a defendant's '*mere assertion* that his [or her] underlying activity was constitutionally protected' will not suffice to shift to the plaintiff the burden of showing that the defendant's underlying activity was criminal, and not constitutionally protected. (*Flatley, supra,* 39 Cal.4th at p. 317, italics added.) As the Supreme Court aptly concluded, such a rule would 'eviscerate the first step of the two-step inquiry set forth in the [anti-SLAPP] statute.' (*Ibid.*) 'While a defendant need only make a prima facie showing that the underlying activity falls within the ambit of the statute, . . . the statute envisions that the courts do more than simply rubberstamp such assertions before moving on to the second step.' (*Ibid.*)" (*Gerbosi, supra*, 193 Cal.App.4th at p. 446.)

"[O]nce the defendant has made the required threshold showing that the challenged action arises from assertedly protected activity, the plaintiff may counter by demonstrating that the underlying action was illegal as a matter of law because either the defendant concedes the illegality of the assertedly protected activity or the illegality is conclusively established by the evidence presented in connection with the motion to

strike." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 286-287 (*Soukup*).)

### B. Probability of Prevailing

"To satisfy the second prong, 'a plaintiff responding to an anti-SLAPP motion must "'state[] and substantiate[] a legally sufficient claim.'" [Citation.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility, [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."' (*Soukup*[, *supra*,] 39 Cal.4th at p. 269, fn. 3.) If the plaintiff 'can show a probability of prevailing on *any part of its claim,* the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' (*Mann*[, *supra*,] 120 Cal.App.4th [at p.] 106, original italics.)" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

## II. <u>Breach of Fiduciary Duty</u>

We conclude Bram's cause of action for breach of fiduciary duty includes multiple claims, at least one of which is based on protected litigation activity.

The complaint alleged the following. Kitch owed fiduciary duties to Bram as a result of her employment and their marital relationship. Defendants and Kitch conspired

12

to deprive Bram of the benefit of her fiduciary duties.  Bram justifiably relied on their representations and was damaged.  The acts and omissions were designed and implemented to deprive Bram of his separate property estate and undermine the policies of the trial court.  Defendants knowingly aided and abetted Kitch in violating every duty owed by Kitch in the management of community and separate property.  They interfered with his receipt of support credits and manipulated DCSS to institute meritless collection efforts.  The legal positions taken concerning his separate property funds, the DCSS claims, *Marvin* claims,[2] filing unsealed confidential drug tests, and attorney-client conflicts were part of a malicious attempt to litigate and intimidate Bram to capitulate.  By directly or indirectly misappropriating Bram's funds and confidential information, then using the information to Bram's detriment, Kitch and the attorneys breached their respective primary fiduciary duties.  Kitch, with the knowledge of the attorneys, exercised unauthorized management and control over Bram's separate property assets and altered the investments without Bram's consent.  Kitch and the attorneys breached fiduciary duties owed to Bram through unilateral transfers to misappropriate Bram's separate property assets for the gain of Kitch and the attorneys.

Bram alleged defendants aided and abetted Kitch's breach of her fiduciary duties by, among other acts, taking certain legal positions and using confidential information in litigation.  These allegations are not merely incidental to the allegations that Kitch took control of Bram's separate property funds and the law firm's confidential information.  The litigation activities are alleged as a basis for liability.  These activities clearly fall within the protected activities set forth in section 425.16.  Therefore, the trial court correctly concluded the anti-SLAPP statute applies to the cause of action for breach of fiduciary duty.  Taking legal positions and using confidential information in litigation are not criminal activities as a matter of law.

---

[2] *Marvin v. Marvin* (1976) 18 Cal.3d 660.

Turning to the second prong of the analysis, Bram has not shown a probability of prevailing on his claim. He did not submit any admissible evidence to satisfy the probability of prevailing prong and does not argue otherwise on appeal.

## III. Fraud and Intentional Misrepresentation

Bram similarly alleged multiple misrepresentations as the basis for his cause of action for fraud and intentional misrepresentation against Kaplan and K&S, most of which consisted of protected litigation activity.

Bram's cause of action for fraud and intentional misrepresentation alleged Kaplan and K&S made statements to Bram that Kitch would not use the funds in their control, misrepresented the source of financial information in the trial court to conceal Kitch's use of confidential documents, delayed resolution of property characterization to allow Kitch to exhaust Bram's separate funds, repeatedly represented that Kitch had not spent the funds in order to obtain support payments, misrepresented Kitch's income and expenses on documents filed with the court, and misrepresented that the funds were exhausted.

Most of the alleged misrepresentations concern litigation activities protected under section 425.16, and therefore, the trial court properly found the anti-SLAPP statute applied. Bram did not submit evidence to establish a probability of prevailing on this cause of action.

## IV. Negligence and Negligent Misrepresentation

Bram's cause of action for negligence and negligent misrepresentation relies on the same representations as his cause of action for intentional misrepresentation. Therefore, the cause of action is based at least in part on protected activities, and the anti-SLAPP statute applies equally to this cause of action. No probability of prevailing has been shown.

14

## V. **Abuse of Process**

Bram's cause of action for abuse of process relies on defendants' use of legal process. This cause of action clearly falls into the protected activities enumerated by the statute, and Bram has not shown a probability of prevailing.

## VI. **Defamation**

The complaint contains a cause of action against Kaplan and K&S for defamation. It is Bram's burden on appeal to demonstrate reversible error. To the extent the cause of action relies on statements made in connection with legal proceedings, these are clearly protected under section 425.16. Bram has not argued otherwise on appeal. Bram did not submit admissible evidence to satisfy the probability of prevailing prong as to the defamation cause of action, and therefore, summary judgment was properly granted as to this cause of action.

## VII. **Unfair Business Practices**

This cause of action is incomprehensible. Bram alleges defendants' actions are defamatory on their face. The actions constitute a trade practice, because the statements were made by defendants about another attorney, impugning his integrity in the same profession, and concerned the ethics, mental stability, and regulated practices that Bram employed in his trade. Defendants submitted false and fraudulent invoices to Kitch and took positions in the litigation that constituted an unfair business practice.

Although Bram's cause of action for unfair business practices is not coherent, it is clearly based in part on statements made by the attorneys in the course of litigation. The anti-SLAPP statute applies, and Bram has not shown a probability of prevailing on this cause of action.

## VIII.  Conspiracy to Defraud

The cause of action for conspiracy to defraud relies on allegations that defendants agreed to mislead Bram and the trial court about Kitch's use of Bram's funds to engage in protracted litigation.  This also concerns activity protected under the anti-SLAPP statute, and Bram has not submitted evidence to show a probability of prevailing.

## IX.  Constructive Trust and Unjust Enrichment

Bram's causes of action for constructive trust and unjust enrichment seek remedies for the causes of action previously alleged.  Since he failed to show a probability of prevailing as to those causes of action, the allegations of constructive trust and unjust enrichment are properly stricken as well.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to defendants and respondents.


KRIEGLER, J.


We concur:


TURNER, P. J.                                            MOSK, J.